1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                      * * * * *

9    UNITED STATES OF AMERICA,

10        Plaintiff,                                  3:02-CR-113-LRH-VPC

11        v.

12                                                    ORDER
     DAVID DOUGLAS AVERY,

13
          Defendant.

14

15        Before the court is petitioner David Douglas Avery's motion to vacate, set aside, or

16   correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 203.[1] The United States filed a

17   response (ECF No. 205), to which Avery replied (ECF No. 206). The court subsequently ordered

18   supplemental briefing (ECF No. 208), which Avery provided (ECF No. 209). The United States

19   filed a responsive brief (ECF No. 212), and Avery replied (ECF No. 213).

20        The court finds that none of the procedural issues that the United States raises bar

21   Avery's claim for relief. Having therefore considered his claim's merit, the court finds that

22   Avery's Nevada robbery convictions are not categorically violent felonies and that he is not an

23   armed career criminal within the meaning of 18 U.S.C. § 924(e). His motion will therefore be

24   granted.

25   ///

26   ///

27   _____

28   [1] This citation refers to the court's docket number.

1    **I.    Background**

2    Avery's § 2255 petition seeks relief under the U.S. Supreme Court's recent decision in

3    *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson*" or "*Johnson 2015*"). In 2003,

4    Avery was convicted of one count of felon in possession of a firearm. ECF No. 149. His

5    Presentence Investigation Report ("PSR") revealed five felony convictions that it classified as

6    "violent felonies" under 18 U.S.C. § 924(e)(2)(B): (1) a Nevada burglary conviction under NRS

7    § 205.060; (2) a California burglary conviction under California Penal Code § 459; and (3) three

8    separate Nevada robbery convictions under NRS § 200.380. The PSR therefore concluded that

9    Avery was an "armed career criminal" within the meaning of 18 U.S.C. § 924(e) and, because he

10   had three or more prior violent-felony convictions, he was subject to a fifteen-year minimum

11   sentence under the Armed Career Criminal Act ("ACCA"). The report calculated a sentencing

12   guidelines range of 188–235 months' imprisonment, and Judge David Hagen ("the sentencing

13   court") sentenced Avery to 211 months' imprisonment. ECF No. 149.

14   Prior to sentencing, Avery filed a memorandum objecting to the PSR's classification of

15   his burglary convictions as violent felonies, arguing that both the Nevada and California statutes

16   were overbroad under the categorical approach. ECF No. 119. Avery did not argue that the three

17   robbery convictions were not violent felonies under the ACCA. He instead acknowledged that

18   three violent-felony convictions are sufficient to trigger the ACCA's sentencing enhancement

19   but argued that the purportedly misclassified burglary convictions did not support the PSR's

20   sentencing recommendation. *Id*. at 5.

21   Avery appealed his conviction and sentence to the Ninth Circuit Court of Appeals, but he

22   did not challenge the classification of any of his prior convictions as violent felonies or his

23   resulting classification as an armed career criminal. *See United States v. Avery*, opening brief,

24   2005 WL 926333 (2005). The Ninth Circuit granted Avery a limited remand because the district

25   court sentenced him before the U.S. Supreme Court ruled that the sentencing guidelines are

26   advisory in *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Avery*, 152 F. App'x

27   659, 661 (9th Cir. 2005). On remand, this court was assigned Avery's case (ECF No. 167) and

28   reinstated his original sentence (ECF No. 174).

1    Avery now brings this § 2255 motion, arguing that, after *Johnson*, he no longer qualifies

2    as an armed career criminal.

3    **II.      Legal standard**

4    Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or

5    correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the

6    United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the

7    sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

8    attack." 28 U.S.C. § 2255(a). The statute creates a one-year statute of limitations for such

9    motions. *Id*. § 2255(f). When a petitioner seeks relief pursuant to a right recognized by a U.S.

10   Supreme Court decision, the statute of limitations runs from "the date on which the right asserted

11   was initially recognized by the . . . Court, if that right has been . . . made retroactively applicable

12   to cases on collateral review . . . ." *Id*. § 2255(f)(3). The petitioner bears the burden of

13   demonstrating that his petition is timely and that he is entitled to relief. *Ramos-Martinez v.*

14   *United States*, 638 F.3d 315, 325 (1st Cir. 2011).

15   **III.     Discussion**

16   In *Johnson*, the Supreme Court held that a portion of the ACCA's violent-felony

17   definition, often referred to as the "residual clause," was unconstitutionally vague. 135 S. Ct. at

18   2557. The ACCA applies to certain defendants charged with unlawful possession of a firearm

19   under 18 U.S.C. § 922(g), such as, in Avery's case, being a felon in possession of a firearm

20   under § 922(g)(1). 18 U.S.C. § 924(e). Normally, a defendant convicted of unlawful possession

21   of a firearm may be sentenced to a statutory maximum of ten-years' imprisonment. *Id*. §

22   924(a)(2). However, if a defendant has three prior convictions that constitute either a "violent

23   felony" or "serious drug offense," the ACCA enhances the ten-year *maximum* sentence to a

24   fifteen-year *minimum* sentence. *Id*. § 924(e)(1).

25   The ACCA defines a violent felony as

26   any crime punishable by imprisonment for a term exceeding one year . . . that—
     (i) has as an element the use, attempted use, or threatened use of physical force

27   against the person of another; or

28

1
2

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

3    *Id*. § 924(e)(2)(B) (emphasis added). The first clause in this definition is known as either the

4    "element" or "force" clause, while the second clause is the "enumerated-offense" clause. The

5    italicized final clause is the "residual clause," which the Supreme Court declared void for

6    vagueness in *Johnson.* When a defendant's prior conviction categorically matches[2] the force

7    clause or a generic offense under the enumerated-offense clause, it is commonly referred to as an

8    "ACCA predicate" or a "predicate offense."

9          After *Johnson*, the Supreme Court subsequently ruled that its decision announced a new

10   substantive rule that applies retroactively to cases on collateral review. *Welch v. United States*,

11   136 S. Ct. 1257 (2016). In turn, defendants that received an ACCA sentence enhancement under

12   the residual clause could move for relief under § 2255 within one year of the *Johnson* decision.

13         Here, Avery argues that he is entitled to relief because the record does not reveal whether

14   the sentencing court applied the residual clause in determining that his Nevada robbery

15   convictions constituted violent felonies.[3] He therefore argues that the court should resentence

16   him and determine whether these convictions satisfy either of the surviving ACCA clauses.

17   Avery devotes the majority of his motion to arguing that, under Supreme Court cases decided

18   after his sentencing, his prior convictions no longer categorically qualify as violent felonies.

19

20
21
22
23
24
25

[2]   As discussed below, courts apply the "categorical approach" "[t]o determine whether a state statute of conviction meets the ACCA's definition of 'violent felony' . . . ." *United States v. Dixon*, 805 F.3d 1193, 1195 (9th Cir. 2015). Under this analysis, a sentencing or reviewing court "may 'look only to the statutory definitions'—i.e., the elements—of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). "If the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly . . . ." *Id*. (citing *Taylor*, 495 U.S. at 599).

26
27
28

[3]   While Avery did object to his two state burglary convictions being classified as violent felonies, the sentencing court would have needed to determine that his Nevada robbery convictions were also violent felonies in order to find that Avery had at least three prior violent-felony convictions and thereby apply the ACCA's sentence enhancement.

1    Conversely, the United States devotes its response to arguing that Avery is not eligible

2  for relief under *Johnson*. First, it highlights the fact that Avery did not challenge whether his

3  robbery convictions were violent felonies before the district court or the Ninth Circuit. ECF No.

4  205 at 3–4. As discussed below, the court will construe this assertion as a procedural-default

5  argument. The United States also argues that Avery's claim is time barred because he seeks relief

6  through pre-*Johnson* cases. *Id*. at 6. Finally, the United States argues that Avery has failed to

7  meet his burden under § 2255 because he is unable to conclusively establish that the sentencing

8  court relied on the residual clause in determining that he was an armed career criminal. *Id*. at 5.

9    Because the United States' arguments raise threshold issues that would bar Avery's

10  claim, the court will resolve each one before addressing whether his Nevada robbery convictions

11  are violent felonies under the surviving ACCA clauses.

12    **A.    Procedural default**

13    In its response to Avery's § 2255 motion, the United States highlighted the fact that

14  Avery did not challenge the classification of his robbery offenses as violent felonies before the

15  sentencing court or the Ninth Circuit. ECF No. 205 at 3–4. Although the United States did not

16  address this fact's legal relevance, Avery interpreted the reference as a procedural-default

17  argument. ECF No. 206 at 2 ("Yet the government asserts that Avery's request for resentencing

18  should be denied because Avery's motion is procedurally defaulted . . . ."). He therefore devoted

19  a portion of his reply to arguing that his claim is not defaulted or can otherwise overcome

20  default. *Id*. at 4–6. Because this issue arose at the end of the motion's briefing and was not

21  sufficiently addressed, the court ordered supplemental briefing. ECF No. 208.[4]

22    Avery now argues that the United States waived this issue by not directly raising it in its

23  original response. ECF No. 209 at 2. However, this assertion is contradictory to Avery's earlier

24  position. Moreover, Avery raised the issue and prompted the need for additional briefing. The

25  court will therefore address whether Avery's claim is procedurally defaulted.

26

27    ───────────

[4] Because the United States solely addressed the threshold issues in its response to Avery's
28  motion, the court requested that the United States also address the categorical approach in its
    supplemental brief.

5

1    A petitioner's claim is procedurally defaulted if he fails to raise it on direct review.

2  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Ratigan*, 351 F.3d 957, 962

3  (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct

4  appeal. . . ."). However, he may overcome default if he can "demonstrate either 'cause' and

5  'actual prejudice,' or that he is 'actually innocent.'" *Bousley,* 523 U.S. at 622 (internal citations

6  omitted). In regards to the cause-and-prejudice analysis, a petitioner may establish cause "where

7  a constitutional claim is so novel that its legal basis is not reasonably available to counsel . . . ."

8  *Reed v. Ross*, 468 U.S. 1, 16 (1984). This can occur when the Supreme Court overrules its own

9  precedent or overturns "a longstanding and widespread practice to which [the] Court has not

10  spoken, but which a near-unanimous body of lower court authority has expressly approved." *Id*.

11  at 17.

12    Avery originally argued in his motion to vacate that he could demonstrate cause because

13  the Court, in *Johnson 2015*, explicitly overruled two of its prior cases in which it held that the

14  residual clause was not unconstitutionally vague. ECF No. 206 at 5. *See Johnson 2015*, 135 S.

15  Ct. at 2563 (overruling "contrary holdings" in *James v. United States*, 550 U.S. 192 (2007) and

16  *Sykes v. United States*, 564 U.S. 1 (2011)). However, as this court highlighted in its order for

17  supplemental briefing, Avery's appeal to the Ninth Circuit occurred before the Supreme Court

18  issued its decisions in *James* and *Skyes*. ECF No. 208 at 4. In apparent response to this fact,

19  Avery now argues that, at the time of his appeal, every circuit court to have considered a

20  vagueness challenge to the ACCA, including the Ninth Circuit, had rejected this argument. ECF

21  No. 209 at 4–5 (citing cases); *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990). He

22  thus contends that *Johnson 2015* overruled a "longstanding and widespread practice" of applying

23  the residual clause, which was approved by a "near-unanimous body of lower court authority."

24  ECF No. 209 at 4.

25    Numerous courts have found that petitioners who were sentenced after *James* or *Skyes*

26  have met the cause prong to the procedural-default exception. *E.g.*, *Johnson v. United States*, No.

27  4:16-CV-00649-NKL, 2016 WL 6542860, at *2 (W.D. Mo. Nov. 3, 2016); *United States v.*

28  *Kennedy*, No. 112CR414LJOSKO1, 2016 WL 6520524, at *3 (E.D. Cal. Nov. 3, 2016); *Dietrick*

*v. United States*, No. C16-705 MJP, 2016 WL 4399589, at \*2 (W.D. Wash. Aug. 18, 2016).

Based on the circuit authority that existed in the years preceding *James* and *Skyes*, this court

similarly finds that Avery had cause for not challenging the ACCA's application to his robbery

convictions on appeal. And because Avery's designation as an armed career criminal increased

his sentence beyond the 10-year maximum sentence under 18 U.S.C. § 924(a)(2), he clearly

satisfies the prejudice prong. *See Murray v. United States*, No. 15-CV-5720 RJB, 2015 WL

7313882, at \*4 (W.D. Wash. Nov. 19, 2015).

Moreover, the United States has conceded that a petitioner who "does not, in fact, have

three qualifying predicate offenses" is "'actually innocent' of being an armed career

criminal . . . ." ECF No. 212 at 10.[5] Because the court ultimately finds that Avery's Nevada

robbery convictions are not ACCA predicates, he is "actually innocent" of being an armed career

criminal, and he therefore also meets this procedural-default exception.

**B.      Time bar**

The United States also argues that Avery's claim for relief actually relies on pre-*Johnson*

*2015* cases, such as *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Johnson v. United*

*States*, 559 U.S. 133 (2010) ("*Johnson 2010*").[6] ECF No. 205 at 6. The United States contends

that, because the Supreme Court decided these cases several years ago, Avery's petition does not

fall within § 2255's one-year statute of limitation and is thus time barred.

---

[5]   Traditionally, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Sawyer v. Whitley*, 505 U.S. 333, 340 (1992) ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."). However, the Supreme Court has also applied the concept "to mean 'innocent' of the death penalty." *Id*. at 343. The Ninth Circuit has so far declined to determine "whether a petitioner may ever be actually innocent of a *noncapital* sentence . . . ." *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012) (emphasis added). Nonetheless, the United States contends that the actual-innocence exception applies to the ACCA (ECF No. 212 at 10), a position accepted by several district courts in this circuit. *E.g.*, *Murray v. United States*, No. 15-CV-5720 RJB, 2015 WL 7313882, at \*4 (W.D. Wash. Nov. 19, 2015) (citing *Summers v. Feather*, 119 F. Supp. 3d 1284, 1290 (D. Or. 2015)).

[6]  Several of the cases cited in this order refer to *Johnson 2010* as *Johnson I* and to *Johnson 2015* as *Johnson II*.

1    Avery's claim does, in part, rely on these earlier cases. For example, as discussed below,

2    Avery argues that his Nevada robbery convictions are no longer a categorical match for the force

3    clause because the Court, in *Johnson 2010*, narrowed the clause's definition of "physical force"

4    to mean "*violent* force—that is, force capable of causing physical pain or injury to another

5    person." 559 U.S. at 140 (emphasis in original). Avery also cites to *Descamps* for its clarification

6    of the "modified categorical approach." *E.g.*, ECF No. 203 at 14.

7    Nonetheless, several district courts have rejected the United States' argument and this

8    court finds it equally unpersuasive. *See United States v. Navarro*, No. 2:10-CR-2104-RMP, 2016

9    WL 1253830 (E.D. Wash. Mar. 10, 2016); *Johnson*, 2016 WL 6542860. While Avery's claim

10   partially relies on *Johnson 2010* and *Descamps*, these cases do not provide him "with a

11   mechanism through which to collaterally attack his armed career criminal designation." *Navarro*,

12   2016 WL 1253830, at *7. Unlike *Johnson 2015,* neither *Johnson 2010* nor *Descamps* announced

13   a new, substantive, and retroactive rule required to seek relief under § 2255. *See Welch,* 136 S.

14   Ct. at 1264 (discussing the standard for retroactivity for "new constitutional rules of criminal

15   procedure"); *In re Jackson*, 776 F.3d 292, 296 (5th Cir. 2015) (holding that *Johnson 2010* does

16   not apply retroactively for § 2255 petitions); *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir.

17   2015), *cert. denied*, 136 S. Ct. 256 (2015) (stating that *Descamps* did not announce a new rule).

18   And even if Avery was, under these cases, able to challenge whether his robbery

19   convictions categorically match the force clause, a court could still have held, absent *Johnson*

20   *2015*, that his convictions satisfied the residual clause. *See Johnson*, 2016 WL 6542860, at *2.

21   Because Avery's claim does rely on *Johnson 2015* for relief and because he filed his

22   petition within one year of this decision, it is not time barred.

23   **C.    Whether the sentencing court applied the residual clause**

24   Finally, the United States argues that Avery has failed to establish that the sentencing

25   court applied the residual clause in determining that his Nevada robbery convictions were violent

26   felonies under the ACCA. ECF No. 205 at 6. Because petitioners bear the burden in § 2555

27   motions, the United States argues that this "failure alone precludes relief." *Id*.

28

1    Avery counters that a review of "the legal landscape" that existed during his sentencing

2    reveals that the sentencing court could not have relied on the enumerated-offense or force clause

3    and would have therefore applied the residual clause. ECF No. 206 at 8. Avery, however, cites to

4    his earlier analysis of his state convictions under case law decided after his sentencing. *Id*. (citing

5    ECF No. 203 at 15–23). This argument is therefore inapposite to determining which clause the

6    sentencing court relied on.

7    The United States similarly argues that the "state of the law" during Avery's sentencing

8    establishes that the court would have concluded that Nevada robbery satisfied the force clause.

9    ECF No. 205 at 7; *see United States v. Melton*, 344 F.3d 1021, 1026 (9th Cir. 2003) (holding that

10   Virginia common-law robbery was an ACCA predicate under the force clause). The United

11   States further contends that, "until a few years ago, it was generally taken as a given that robbery

12   was a violent felony and many defendants, like Avery, simply conceded the matter." ECF No.

13   205 at 8 n. 5.

14   Avery counters that he does not bear the burden of establishing that the sentencing court

15   relied on the residual clause because constitutional error resulted from the fact that the ACCA

16   provided the court with an unconstitutional sentencing option. ECF No. 206 at 8–9. He

17   analogizes to longstanding habeas case law regarding constitutionally-defective jury instructions:

18   
19   [A] general verdict must be set aside if the jury was instructed that it could rely on
     any of two or more independent grounds, and one of those grounds is insufficient,
     because the verdict may have rested exclusively on the insufficient ground. The
20   cases in which this rule has been applied all involved general verdicts based on a
     record that left the reviewing court uncertain as to the actual ground on which the
21   jury's decision rested.

22   *Zant v. Stephens*, 462 U.S. 862, 881 (1983). Avery argues that, because his sentencing record is

23   silent on which ACCA clause the court applied, this court should apply a harmless-error analysis.

24   ECF No. 206 at 9; *see Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008).

25   Several district court have adopted this analogy, holding that, when the record is "unclear

26   on which ACCA clause the sentencing judge rested a predicate conviction[,] the petitioner's

27   burden is to show only that the sentencing judge may have used the residual clause." *United*

28   *States v. Winston*, No. 3:01-CR-00079, 2016 WL 4940211, at *6 (W.D. Va. Sept. 16, 2016)

1    (citing cases); *see also Dietrick*, 2016 WL 4399589, at *3 ("[T]he Court finds that, rather than

2    placing the burden on the Petitioner in a circumstance where it is unclear whether an

3    unconstitutional portion of the statute was relied upon, the 'risk of doubt' is upon the

4    Government."); *Johnson*, 2016 WL 6542860, at *2; *United States v. Wolf*, No. 1:04-CR-347-1,

5    2016 WL 6433151 (M.D. Pa. Oct. 31, 2016).

6        Conversely, the court's independent review of this emerging area of case law revealed

7    only one court that originally rejected this reasoning. In *United States v. King*, the district court

8    held that,

9        unlike in the jury-instruction scenario, it is not impossible to discern the basis for
         the sentencing judge's application of the ACCA, even though it was never made
10       explicit. The reviewing court can look to the circumstances surrounding the
         defendant's sentence—clues from the record and, more importantly, the state of
11       the law at the time of sentencing—to attempt to discern which clause was applied.

12   *United States v. King*, No. 2:11-CR-157, 2016 WL 4379008, at *2 (W.D. Pa. Aug. 17, 2016)

13   *vacated after reconsideration* (Sept. 27, 2016).[7] By relying in part on "the state of the law at the

14   time of sentencing," the *King* court's now-vacated decision mirrors the United States' argument

15   regarding the general perception at the time of Avery's sentencing that state-law robbery was a

16   violent felony under the force clause.[8]

17       At least one court has directly rejected a similar argument by the United States. In a

18   recent decision also titled *Johnson v. United States*, the district court examined a petitioner's

19   second-degree burglary convictions under Missouri law. 2016 WL 6542860, at *1. While the

20   [7]  Following the petitioner's subsequent motion for reconsideration, the *King* court later vacated
     its own order without explanation. *See United States v. Wolf*, No. 1:04-CR-347-1, 2016 WL
21   6433151, at *4 (M.D. Pa. Oct. 31, 2016). While the decision is no longer valid case law, the
22   court is including its reasoning in order to place the United States' arguments within the context
     of Avery's jury-instruction argument.
23

24   [8]  The court's research also revealed an Eleventh Circuit panel decision that held that, "[i]f the
     district court cannot determine whether the residual clause was used in sentencing and affected
25   the final sentence—if the court cannot tell one way or the other—the district court must deny the
     § 2255 motion." *In re Moore*, 830 F.3d 1268, 1273 (11th Cir. 2016). Days later, a separate
26   Eleventh Circuit panel reached the opposite conclusion. *In re Chance*, 831 F.3d 1335, 1341 (11th
     Cir. 2016). However, neither panel addressed the jury-instruction analogy that Avery asserts. *See*
27   *United States v. Winston*, No. 3:01-CR-00079, 2016 WL 4940211, at *5–6 (W.D. Va. Sept. 16,
     2016) (comparing these two decisions).
28

1    court had determined that these convictions were ACCA predicates at the petitioner's sentencing,

2    the record did not reveal whether the court applied the enumerated-offense clause[9] or the residual

3    clause. *Id*. Similar to the force-clause issue in this case, the United States argued that the

4    "prevailing case law" during the petitioner's sentencing established that the court would have

5    relied on the enumerated-offense clause. *Id*. In support of this assertion, the United States cited

6    Eight Circuit precedent that second-degree burglary qualified as an ACCA predicate under this

7    clause. *Id*.

8         Nonetheless, the *Johnson* district court rejected this argument, holding that "it [was]

9    equally probable that a court would rely on the broader, residual clause, which would also avoid

10   any conflict between existing Supreme Court [precedent] and Eighth Circuit precedent." *Id*. The

11   court cited to an Eight Circuit decision in which the court of appeals declined to determine

12   whether second-degree burglary was a categorical match for generic burglary, instead holding

13   that the offense would "clearly" satisfy the residual clause. *Id*. (citing *United States v. Cantrell*,

14   530 F.3d 684, 694–96 (8th Cir. 2008)).

15        The court finds that examining the state of the law at the time of a petitioner's sentencing

16   is not conclusive of which ACCA clause the sentencing court applied. It is possible that the

17   sentencing court took as a given the perception that state-law robbery convictions were ACCA

18   predicates under the force clause. Conversely, it is also plausible that the court found that the

19   convictions were ACCA predicates because it was confident that, even if the convictions did not

20   satisfy the force clause, they would fall within the broader range of crimes that satisfied the

21   residual clause.

22        This court need not weigh the likelihood of both scenarios because the court is also

23   persuaded by the line of cases that have adopted the jury-instruction analogy that Avery asserts.

24   Because the ACCA presented the sentencing court with two alternate avenues for finding that

25   Nevada robbery was an ACCA predicate (i.e., the force and residual clauses), and it is possible

26   that the court relied on the unconstitutional alternative, there was constitutional error.

27

28
_____
[9]  Burglary is an enumerated offense under the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii).

1    Moreover, the fact that Avery's "right to due process is at stake lends additional weight to

2  this conclusion. In the context of a potential deprivation of such a critically important right, a

3  showing that the sentencing court might have relied on an unconstitutional alternative ought to

4  be enough to trigger inquiry into whether the sentencing court's consideration of that alternative

5  was ultimately harmless." *United States v. Ladwig*, No. 2:03-CR-00232-RHW, 2016 WL

6  3619640, at *3 (E.D. Wash. June 28, 2016).

7    In the context of the ACCA, the sentencing court's possible reliance on the residual

8  clause would be harmless error only if Avery's Nevada robbery convictions were still

9  categorically violent felonies under either the force or enumerated-offense clause. *See id*. at *4.

10  The court will therefore apply the categorical approach to the Nevada statute.[10]

11    **D.    The categorical approach**

12    In order to determine whether a defendant's prior convictions qualify as an ACCA

13  predicate under the statute's surviving clauses, courts apply a three-step process set out in

14  *Descamps*:

> At the first step, [courts] compare the elements of the state offense to the elements
> of the generic offense defined by federal law. If this 'categorical approach'
> reveals that the elements of the state crime are the same as or narrower than the
> elements of the federal offense, then the state crime is a categorical match . . . .
> When a statute is 'overbroad,' meaning that it criminalizes conduct that goes
> beyond the elements of the federal offense, [courts] turn to step two: determining
> whether the statute is 'divisible' or 'indivisible.' If the statute is indivisible, [the]
> inquiry ends, because a conviction under an indivisible, overbroad statute can
> never serve as a predicate offense. Only when a statute is overbroad and divisible
> do [courts] turn to step three—the 'modified categorical approach.' At this step,
> [courts] may examine certain documents from the defendant's record of
> conviction to determine what elements of the divisible statute he was convicted of
> violating.

---

[10]   While the United States has only addressed whether Avery's Nevada *robbery* convictions are
categorically violent felonies, Avery requests that the court also determine whether his Nevada
and California *burglary* convictions are violent felonies. However, as Avery has acknowledged,
the sentencing court analyzed his burglary convictions under the enumerated-offense clause.
*Avery*, opening brief, 2005 WL 926333, at *16. The United States does not challenge this
representation. ECF No. 205 at 8 n. 6. Because the sentencing court's burglary analysis did not
invoke the residual clause, its holding is unaffected by *Johnson 2015*. This court therefore finds
no basis for re-applying the categorical approach to these two convictions.

12

1    *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015) (internal citations omitted); *see also*

2    *United States v. Cisneros*, 826 F.3d 1190, 1193 (9th Cir. 2016). The court thus begins this

3    analysis by examining the elements of Nevada robbery:

> Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of *force or violence or fear of injury,* immediate or future, to his or her *person or property*, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
>
> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.
>
> *The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property*. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

13   Nev. Rev. Stat. § 200.380(1) (emphasis added).

14        Addressing the categorical approach's first step, Avery argues that Nevada robbery is

15   overbroad and thus not categorically a violent felony for two independent reasons. First, he

16   contends that a defendant may commit Nevada robbery through the use of minimal force during

17   the crime's commission and that the statute may therefore be violated through less than the

18   "violent force" required under *Johnson 2010*. Second, Avery argues that the statute is broader

19   than the force clause because a defendant may commit robbery by unlawfully taking a victim's

20   property through the use of force or fear against *either* the victim's person or his property.

21        As addressed below, the court agrees that, because NRS § 200.380 explicitly states that

22   the degree of force used to commit or escape from a robbery is immaterial, Nevada robbery is

23   overbroad and is not a categorical match for the force clause. And because this issue alone

24   prevents Avery's robbery convictions from qualifying as ACCA predicates, the court will not

25   reach his second argument regarding threats against property.

26   ///

27   ///

28

1          **1.        Section 200.380 can be violated through the use of minimal force**

2          In *Johnson 2010*, the Supreme Court addressed the meaning of the phrase "physical

3  force" in the force clause and thus what degree of force is required for a state statute to

4  categorically match the clause. 559 U.S. 133. There, the defendant appealed the district court's

5  holding that his prior Florida battery conviction was categorically a violent felony. *Id*. at 136. As

6  determined by the Florida Supreme Court,[11] the statute could be "satisfied by *any* intentional

7  physical contact, 'no matter how slight.'" *Id*. at 138 (emphasis in original) (quoting *State v.*

8  *Hearns*, 961 So. 2d 211, 218 (Fla. 2007)). "The most 'nominal contact,' such as a 'tap on the

9  shoulder without consent' establishes a violation." *Id*. (internal brackets and citations omitted).

10          The U.S. Supreme Court, however, rejected the government's argument that "physical

11  force" under the force clause could entail even the "merest touch." *Id*. at 143. The Court instead

12  held that the phrase "means *violent* force—that is, force capable of causing physical pain or

13  injury to another person." 559 U.S. at 140 (emphasis in original). Thus, while physical force

14  "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for

15  example"—it did not consist of the "nominal contact" allowed for under Florida battery. *Id*. at

16  143. The state statute was thus overboard in regards to the force clause and not categorically a

17  violent felony.

18          Since *Johnson 2010*, numerous circuit courts have found that several state robbery

19  statutes are overbroad because, like the Florida battery statute, they criminalize the use of even

20  minimal force rather than only violent force. For example, in *United States v. Parnell*, the Ninth

21  Circuit held that Massachusetts' robbery statute did not satisfy the force clause because "the

22  degree of force" used to commit robbery under the statute "is immaterial so long as it is

23  sufficient to obtain the victim's property 'against his will.'" 818 F.3d 974, 978 (9th Cir. 2016)

24  (quoting *Commonwealth v. Jones*, 283 N.E. 2d 840, 843 (Mass. 1972)).

25

26

---

27  [11]  In comparing the force clause or the elements of a generic offense to the elements of a state

28  statute, federal courts are bound by a state Supreme Court's interpretation of its state's laws. *Johnson 2010*, 559 U.S. at 138.

1    The court found that Massachusetts case law regarding robbery convictions for "purse

2    snatching" demonstrated that the statute criminalized "minimal, nonviolent force." *Id.* at 980. In

3    one such case, "the defendant simply grabbed the victim's pocketbook from her arm." *Id.* (citing

4    *Jones*, 283 N.E.2d at 842). Although no struggle ensued and the victim barely realized her bag

5    was being taken, the state Supreme Court upheld the robbery, reasoning that the "snatching"

6    involved the use of "some actual force." *Id.* (citing *Jones*, 283 N.E.2d at 845). Because

7    Massachusetts law considers the use of minimal, non-violent force as a violation of its robbery

8    statute, it was overbroad in regards to the force clause. *Id.* at 981; *see also United States v.*

9    *Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (finding that North Carolina common-law robbery is

10   overbroad because, under state precedent, "the degree of force used is immaterial, so long as it is

11   sufficient to compel the victim to part with his property."); *United States v. Eason*, 829 F.3d 633,

12   641 (8th Cir. 2016) (finding Arkansas' robbery statute overbroad).

13   Similarly, several district courts within this circuit have found state robbery statutes

14   overbroad if state law considers as immaterial the degree of force used to commit the crime. *E.g.*,

15   *United States v. Dunlap*, 162 F. Supp. 3d 1106, 1114 (D. Or. 2016) (finding that Oregon's

16   robbery in the third degree statute, ORS § 164.395, only requires minimal force and is thus

17   overbroad based on a state case in which the defendant was convicted under the statute after he

18   snatched the victim's purse from her hands without her even "feel[ing] a tug or 'much of

19   anything.'"); *United States v. Kleckner*, No. CR-09-032-JLQ, 2016 WL 6089820, at *3 (E.D.

20   Wash. July 11, 2016) (finding that Washington State's robbery statute, RCW 9A.56.190, is

21   overbroad because it states that "the degree of force" used to unlawfully retain a person's

22   property "is immaterial.").

23   Here, Avery argues that the use of even minimal force during a robbery violates NRS §

24   200.380, citing to the statute's plain language: "The degree of force used is immaterial if it is

25   used to compel acquiescence to the taking of or escaping with the property." Nev. Rev. Stat. §

26   200.380(1). Avery compares this language to the Massachusetts case law in *Parnell*, arguing that

27   the Ninth Circuit's holding should control in this case. ECF No. 213 at 10. He cites to several

28

1   Nevada Supreme Court cases that he argues demonstrate that robbery convictions involving only

2   nominal force have been upheld. ECF No. 203 at 22–23; ECF No. 213 at 10–11.

3          Although the court ultimately agrees that NRS § 200.380 is overbroad, the cases that

4   Avery cites are inapposite because they involve either (1) a robbery committed through fear of

5   great bodily injury or (2) force that cannot be considered nominal even under *Johnson 2010. See*

6   *Robertson v. Sheriff, Clark County*, 565 P.2d 647 (Nev. 1977) (finding that money taken from a

7   cash register during an armed robbery at a bar was taken from the "presence" of the bartender,

8   even though he hid "in the men's room out of fear."); *Mangerich v. State*, 572 P.2d 542 (Nev.

9   1977) (upholding a robbery conviction of a masked robber who told the victim "she would not be

10  hurt" if she complied with his demands because this exchange "could cause a reasonable [store]

11  clerk to fear for her safety."); *Jefferson v. State,* 840 P.2d 1234 (Nev. 1992) (finding sufficient

12  evidence of force during a purse snatching that resulted in a struggle with the victim, leaving her

13  with two bruises (i.e., force sufficient to cause injury)); *State v. Snyder*, 172 P. 364 (Nev. 1918)

14  (upholding a robbery conviction when the defendant poisoned the victim, which is undoubtedly

15  violent force).[12]

16          The court has, however, identified two Nevada Supreme Court cases that illustrate NRS

17  § 200.380's application and the immateriality of the force used to commit Nevada robbery. In

18  *Daniels v. State*, the defendant approached an undercover detective, who was disguised "as an

19  intoxicated vagrant," and attempted to show the detective a necklace. 110 P.3d 477, 478 (Nev.

20  2005). When the detective stated that he was not interested in the necklace, the defendant pushed

21  his hand, presumably the one holding the necklace, into the detective's face, "using enough force

22  to push [the detective's] head back[,]" while simultaneously taking the detective's wallet. *Id.*

23  Although the detective testified that the incident made him "nervous" due to prior undercover

24  experiences, there is no indication in the case that the force was sufficient to either injure the

25  detective or cause him physical pain. *Id.* The defendant argued that, because "he did not attack"

26  ────────────────

27  [12]   Avery argues that *Robertson* and *Mangerich* demonstrate that Nevada robbery can be
accomplished without even an implicit threat; however, the cases' facts demonstrate that the
defendants' actions placed the victims in objectively reasonable fear, which the defendants used

28  to unlawfully take the personal property.

1    the detective "with his hands or fists[,]" the force used was insufficient to constitute Nevada

2    robbery. *Id*. at 480. The Court rejected this argument, merely quoting NRS § 200.380's language

3    regarding the immateriality of force used to commit or escape from a robbery. *Id*. at 480 (quoting

4    Nev. Rev. Stat. § 200.380(1)).

5         Similarly, in *Valdovinos v. State*, an unpublished disposition, the Court affirmed a

6    robbery conviction after the defendant argued that he used insufficient force to take a gun, the

7    personal property stolen from one of the victims. 381 P.3d 672, 2012 WL 5349406, at *1 (Nev.

8    2012). The victim testified that the defendant "yanked, pulled, or pushed [her] arm as he

9    snatched the gun from her outstretched hands." *Id*. While the Court acknowledged that "the

10   degree of force used on the victim *was not substantial*," it reiterated that "the degree of force is

11   immaterial under" NRS § 200.380. *Id*. (emphasis added).[13]

12        Finally, the court addresses the United States' argument that NRS § 200.380 does require

13   more than nominal force because "the force used must be sufficient to 'compel acquiescence' to

14   the unlawful taking of property against the victim's will." ECF No. 212 at 6. This argument

15   seemingly interprets the statute to criminalize nominal force only when the victim acquiesced,

16   due to fear or force, to the taking of his property rather than when the defendant takes the

17   property by force against the victim's will. This narrow interpretation, however, is at odds with

18   the Nevada Supreme Court's application of the statute in both *Daniels* and *Valdovinos*, where the

19   victims did not acquiesce to the robbers taking their personal property. The former case involved

20   pickpocketing coupled with nominal force, while the latter involved nominal force used to yank

21   the property out of the victim's hand.

22        Moreover, because the United States argues that it "cannot conceive" of "how a

23   perpetrator could use force or fear to compel acquiescence to" an unlawful taking of property

24   (ECF No. 212 at 6), its interpretation of NRS § 200.380 would render the statutory language at

25

---

26   [13] While the defendant and his co-conspirators later used additional force and "the fear of force"
     against the victim, the Court's statement regarding the immateriality of force used in the robbery
27   was specifically in response to the defendant "yanking" the gun from the victim's hand. *See*
     *Valdovinos v. State*, 381 P.3d 672, 2012 WL 5349406, at *1 (Nev. 2012).
28

17

1    issue meaningless. In other words, if a robber can only use *violent force* to "compel

2    acquiescence," then it would be unnecessary for the statute to state that "[t]he degree of force

3    used is immaterial . . . ." Nev. Rev. Stat. § 200.380(1). Based on the statute's plain text and its

4    application in *Daniels* and *Valdovinos*, the court finds that NRS § 200.380 criminalizes any

5    degree of force a robber uses to take a victim's personal property against his or her will. The

6    statute is therefore indistinguishable from the Massachusetts robbery statute in *Parnell*. *See*

7    *Parnell*, 818 F.3d at 979 ("[T]he degree of force is immaterial so long as it is sufficient to obtain

8    the victim's property 'against his will.'").

9          Because the use of even minimal force during the commission of or escape from a

10   robbery violates NRS § 200.380, the statute is overbroad in regards to the force clause.[14]

11                    **2.       Section 200.380 is not divisible**

12         A statute is divisible if it "list[s] elements in the alternative, and thereby define[s]

13   multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). A statute that is worded

14   disjunctively is not necessarily divisible. *Id*.; *see also Rendon v. Holder*, 764 F.3d 1077, 1086

15   (9th Cir. 2014). Here, NRS § 200.380 is not divisible as to the force used to commit a robbery

16   because the statute considers a taking "by means of force or violence or fear of injury" as a

17   single element, without alternative crimes defined for the degree of force used.[15] Because the

18   statute is both overbroad and indivisible, the court may not proceed to the modified categorical

19   approach and the inquiry ends.

20

21   [14] The United States does *not* argue that Nevada robbery, when committed through force or fear
     of injury to the victim's *person*, is a categorical match for generic extortion under the
22   enumerated-offense clause. It instead contends that, where "force or violence or fear of injury is
     directed toward the '*property*' of another, the crime constitutes generic extortion." ECF No. 212
23   at 4 (emphasis added); *see United States v. Becerril-Lopez*, 541 F.3d 881, 891–92 (9th Cir. 2008)
     (finding that a violation of California's robbery statute that involves a threat to the victim's
24   *property* rather than his *person* is not categorically generic robbery under U.S.S.G § 2L1.2, but
     that "it would necessarily constitute generic extortion"). This argument, however, is a response
25   to Avery's contention that NRS § 200.380 is overbroad because it allows for threats to *property*.
     ECF No. 213 at 12. Because the court need not reach this separate property argument, the court
26   will not address generic extortion.

27

28   [15] The United States has not argued that NRS § 200.380 is divisible in regards to the degree of
     force the defendant uses.

1    The court recognizes that, as was documented in Avery's Presentence Investigation

2    Report, he did use violent force during each of his three Nevada robberies. However, the U.S.

3    Supreme Court has made clear that "[h]ow a given defendant actually perpetrated the crime—

4    what [the Court has] referred to as the 'underlying brute facts or means' of commission—makes

5    no difference; even if his conduct fits within the generic offense [or the force clause], the

6    mismatch of elements saves the defendant from an ACCA sentence." *Mathis*, 136 S. Ct. at 2251

7    (internal citation omitted). Although acknowledging and agreeing that the categorical approach's

8    application raises "concerns," the Supreme Court has reiterated that, "whether for good or for ill,

9    the elements-based approach remains the law." *Id*. at 2257.

10    This court is bound by that law and, based on the analysis above, finds that Avery's

11    robbery convictions are not categorically violent felonies. Accordingly, he lacks a minimum of

12    three ACCA predicate convictions and is not an armed career criminal within the meaning of 18

13    U.S.C. § 924(e). The court will therefore grant Avery's motion, vacate his sentence pursuant to

14    28 U.S.C. § 2255, and resentence him.

15    **IV.    Resentencing**

16    Having considered Avery's extensive criminal history, including the violent nature of his

17    Nevada robbery convictions, the court resentences Avery to ten years' imprisonment, the

18    statutory maximum sentence for a conviction under 18 U.S.C. § 922(g). *See* 18 U.S.C. §

19    924(a)(2). The court also re-imposes the terms of supervised release that this court imposed in

20    Avery's amended judgment, dated April 21, 2006 (ECF No. 176).

21    Because Avery has been imprisoned under his current sentence for more than ten years,

22    he is eligible for immediate release. The court will therefore order the Federal Bureau of Prisons

23    to release Avery on January 18, 2017, unless the court orders otherwise. Within seven days of

24    the date of this order, the United States may submit a brief showing cause as to why Avery

25    should not be immediately released. Additionally, either party may, within seven days of this

26    order, submit a brief showing cause as to why the court should hold a sentencing hearing.

27    ///

28    ///

**V.     Conclusion**

IT IS THEREFORE ORDERED that petitioner David Douglas Avery's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 203) is GRANTED.

IT IS FURTHER ORDERED that Avery's amended sentence (ECF Nos. 174, 176), which re-imposed Avery's original sentence (ECF Nos. 146, 149), is VACATED.

IT IS FURTHER ORDERED that Avery is resentenced to ten years' imprisonment.

IT IS FURTHER ORDERED that the terms of supervised release imposed in this court's amended judgment (ECF No. 176) are re-imposed.

IT IS FURTHER ORDERED that the Federal Bureau of Prisons shall release Avery on January 18, 2017, unless the court has ordered otherwise.

IT IS FURTHER ORDERED that, within seven days of the date of this order, the United States may submit a brief showing cause as to why Avery should not be immediately released.

IT IS FURTHER ORDERED that, within seven days of the date of this order, either party may submit a brief showing cause as to why the court should hold a sentencing hearing.

IT IS SO ORDERED.

DATED this 3rd day of January, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE